UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JEFFREY RONALD WOLSKI, Plaintiff, | ) | |
| v. | ) | 3:25-CV-317-KAC-JEM |
| JAYCEE T. REFF, et al.; Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action is before the Court on "Defendants Jaycee T. Reff and City of Jefferson City, Tennessee's Motion for Summary Judgment" [Doc. 27]. For the reasons below, the Court (1) **grants** Defendants' Motion for Summary Judgment as it relates to Plaintiff Jeffrey Ronald Wolski's Section 1983 federal claims, **dismissing** those claims **with prejudice** and (2) declines to exercise jurisdiction over the remaining state claims, **dismissing** those claims **without prejudice**.

## I. Background[1]

Defendant City of Jefferson City is a municipality located in Jefferson County, Tennessee that apparently operates the Jefferson City Police Department and employs its police officers [*See generally* Docs.1 at 1, 12 at 1]. Defendant Officer Reff is a patrol officer for the Jefferson City Police Department [*See* Doc. 27-2 at 2 (Deposition of Jaycee T. Reff ("J. Reff Dep.") 4:12-19)]. Prior to the events of this case, he had been trained through "Advanced Roadside

[1] Many of "the events in this case are recorded on video," and the Court views those recorded facts "in the video's light, not in a light favorable to Plaintiff." *See Cunningham v. Shelby Cnty.*, 994 F.3d 761, 765 (6th Cir. 2021). The Court views the other facts in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

Impairment Detection and Enforcement" school and had made "around 25" "DUI Arrests" [*Id.* at 8 (J. Reff Dep. 23:10-25), 11-12 (J. Reff Dep. 30:21-31:9)].

On November 12, 2024, Plaintiff went to a wake around 4:00 p.m. [(Doc. 33-1 at 16 (Deposition of Jeffrey Ronald Wolski ("J. Wolski Dep.") 59:7-15)]. He went to the American Legion after the service, arriving "between 5:20 and 5:30" [*Id.* at 16-17 (J. Wolski Dep. 60:5-7, 61:15-17))]. At the American Legion, Plaintiff drank "four Jack and Diet Cokes" [*Id.* at 17 (J. Wolski Dep. 61:20-22)]. Afterward, Plaintiff left to drive home [*Id.* at 16 (60:5-7)].

At around 11:00 p.m., Defendant Officer Reff saw Plaintiff's truck "traveling eastbound with no operational tail lights," in violation of Tennessee Code Annotated § 55-9-402 [*See* Docs. 27-9 (Affidavit of Complaint); 29 (J. Reff Body Camera)].[2] So, Defendant Officer Reff initiated a traffic stop [*Id.*]. He approached the truck and "made contact with" Plaintiff [*Id.*]. Officer Reff introduced himself and "explained" that "the reason I stopped you today is that you got no tail lights on" [*See* Docs. 33-1 at 19 (J. Wolski Dep. 69:16-24); 29 (J. Reff Body Camera)]. Plaintiff responded, "oh;" and his wife, a passenger in the truck, informed Officer Reff that "this [wa]s a new truck" [*See* Doc. 29 (J. Reff Body Camera)].

Plaintiff asked Defendant Officer Reff if he could exit the truck to "see" the lights [*Id.*]. And Officer Reff invited Plaintiff to "step out of the truck" [*Id.*]. Plaintiff advised that he was a retired law enforcement officer [*Id.*]. Then, Plaintiff walked to the back of the truck, saw that his taillights were not on, and asked Defendant Officer Reff to "hold on a second" [*Id.*]. Plaintiff walked back to the driver's side door, engaged the lights, and asked Defendant Officer Reff: "Are they on now?" [*Id.*]. They were [*Id.*]. Plaintiff explained that he had taken the truck "into the

[2] The Parties' manually-filed, oversized exhibits are on file with the Court [*See* Docs. 29, 34].

shop" that day but he generally leaves his taillights "on auto" and the mechanic must have "switched" the setting [*Id.*].

Defendant Officer Reff asked Plaintiff for his "driver's license, registration, and proof of insurance," which Plaintiff provided [*Id.*]. While checking Plaintiff's documentation, Defendant Officer Reff asked where Plaintiff was "coming from" [*Id.*]. He said, "the Legion" [*Id.*]. He explained that the mother of a friend "just died," so he and his wife were "up there late" [*Id.*]. Defendant Officer Reff asked Plaintiff to "come back to" his cruiser with him so he could "take a look" at Plaintiff's documentation [*Id.*]. Plaintiff agreed, and they walked back to the cruiser [*Id.*].

Defendant Officer Reff explained to Plaintiff "part of the reason that I pulled you back here to talk to you" is that "when you got out of the truck, I can smell a little bit of alcohol coming off of you," "and then you admitted to being at the Legion" [*Id.*]. "With all that in mind," Defendant Officer Reff asked Plaintiff if he "would be willing to do some tests" to ensure Plaintiff was "safe to drive" [*Id.*]. Plaintiff answered: "I live four houses down" [*Id.*]. And Defendant Officer Reff reiterated that because Plaintiff (1) was "coming from the Legion," (2) "smell[ed] [of] alcohol," and (3) exhibited "slurred speech," Defendant Officer Reff "want[ed] to make sure that" Plaintiff was "safe to operate a vehicle" [*Id.*]. Plaintiff then offered "to park my [his] car right here [on the side of the road] and walk [home] if you'd let me" [*Id.*].

Defendant Officer Reff again asked Plaintiff if he would be willing to do "any tests" [*Id.*]. And Plaintiff responded: "I am so banged up, I mean, as far as the sobriety [tests], I have bad knees, bad back" [*Id.*]. Defendant Officer Reff assured Plaintiff that he would "take injuries into consideration" when evaluating Plaintiff's performance [*Id.*].

Defendant Officer Reff got back into his cruiser and called his supervisor, Sergeant Hager [*Id.*]. Officer Reff explained to Sergeant Hager that Plaintiff was exhibiting several signs

of impairment, including "the odor of alcohol" and "slurred speech" [*Id.*]. He acknowledged that Plaintiff was not "falling over himself" or exhibiting "high impairment indicators" [*Id.*]. Sergeant Hager counseled Officer Reff that because Plaintiff is "a prior law enforcement" officer, Plaintiff may be "making it difficult" to determine whether he was impaired [*Id.*]. Sergeant Hager advised that if Plaintiff was unwilling to perform any tests, Officer Reff needed "to treat him [Plaintiff] like anyone else;" meaning that if Plaintiff "would not" perform "field sobriety" tests, Officer Reff would need to "go off what" information he had in making an impairment determination [*Id.*].

Defendant Officer Reff concluded the call and reengaged Plaintiff [*Id.*]. He said to Plaintiff, "obviously, I take it that you did drink at the Legion just a little bit" [*Id.*]. And Plaintiff replied, "yes sir" [*Id.*]. Officer Reff followed up: "How many did you have there?" [*Id.*]. Plaintiff answered: "Probably four" [*Id.*]. Officer Reff asked, "How long ago?" [*Id.*]. Plaintiff answered, "About two and a half hours" [*Id.*]. Then, Officer Reff asked Plaintiff whether he was a "regular" drinker; Plaintiff advised he was not [*Id.*]. Plaintiff said that he did not have any food while at the American Legion, but he ate dinner before the funeral [*Id.*].

Sergeant Hager then arrived at the scene. Defendant Officer Reff explained to Sergeant Hager that Plaintiff "had dinner at [his] house," "went to the wake" and then straight to "the Legion" [*Id.*]. Officer Reff further explained that Plaintiff (1) admitted to "ha[ving] four beers probably about two and a half hours ago," (2) "refused to do fields," and (3) was exhibiting "slurred speech" [*Id.*]. Officer Reff acknowledged that while Plaintiff was not "stumbling," he did have "the odor of alcohol coming off of him" [*Id.*]. Apart from the fact that Plaintiff was driving while his "headlights weren't all the way on," Officer Reff reported that Plaintiff did not exhibit any concerning "driving behavior" [*Id.*]. Finally, Officer Reff recalled that Plaintiff offered "to park my car right here and walk [home]" if Officer Reff would let him [*Id.*].

Based on his experience and training, Defendant Officer Reff suspected that Plaintiff was not "very, very impaired" but probably "right around the legal limit" [*Id.*]. Sergeant Hager advised that, based on these facts and suspicions, Officer Reff should "run through fields" and give Plaintiff the opportunity to dispel the suspicion that Plaintiff was impaired [*Id.*].

Defendant Officer Reff approached Plaintiff and explained that he wanted to perform standardized field sobriety tests "to confirm or dispel my suspicions" and "give" Plaintiff "the benefit of the doubt." [*Id.*]. Officer Reff advised Plaintiff that if he did not agree to perform field tests, Officer Reff would "have to go off of" the evidence that he had [*Id.*]. And Officer Reff explained that (1) Plaintiff "was driving down the road with [his] headlights not completely on so [his]" truck "ha[d] no taillights," (2) "the odor of alcohol [was] coming off of" Plaintiff, and (3) Plaintiff exhibited "slurred speech" [*Id.*]. "With that in mind," Plaintiff said that he was "definitely" "willing to do field sobriety tests" [*Id.*].

Defendant Officer Reff proceeded to administer a series of field sobriety tests to Plaintiff, including the Horizontal Gaze Nystagmus (HGN), Walk-and-Turn, One-Leg Stand, Vertical Gaze Nystagmus, Lack of Convergence, Modified Romberg Balance, Pupil Size Observance, and Finger-to-Nose [*Id.*; *see also* Doc. 28 at 16]. After concluding the tests, Officer Reff reported to Sergeant Hager that Plaintiff showed a "lack of smooth pursuit" in his eyes during the HGN test [*Id.*]. But Plaintiff was "solid" on the Finger-to-Nose test and some others [*Id.*]. Plaintiff also showed a lack of balance during the Walk-and-Turn and One-Leg Stand and "eyelid tremors" during the Modified Romberg Balance test [*Id.*]. But Officer Reff was ultimately unsure whether Plaintiff's poor performance on those tests was due to "knee issues" or impairment [*Id.*].

In the end, based on Defendant Officer Reff's training and experience and because Plaintiff (1) was driving home from "the Legion," (2) had "headlights not completely on so [his]" truck

"ha[d] no taillights," (3) had "the odor of alcohol" on his person, (4) exhibited "slurred speech," (5) admitted to consuming "four" alcoholic drinks at the American Legion, and (6) performed poorly on some of the field sobriety tests, Officer Reff placed Plaintiff under arrest. He arrested Plaintiff for Driving Under the Influence, in violation of Tennessee Code Annotated § 55-10-401 [*Id.*; *see also* Doc. 27-8 (Affidavit of Complaint)].

Defendant Officer Reff took Plaintiff to the Jefferson City Police Department [*See* Doc. 29 (J. Reff Body Camera)]. Once there, Plaintiff consented to performing a breathalyzer test [*Id.*]. Plaintiff took the breathalyzer test at approximately 12:25 a.m. on November 13 [*See id.*]. The test yielded a blood alcohol content of 0.029% [*Id.*; *see also* Doc. 27-11 (Breathalyzer Test Results)]. Plaintiff subsequently consented to a blood draw and was transported to Jefferson Memorial Hospital [*Id.*; *see also* Doc. 33-1 at 22 (J. Wolski Dep. 83:19-21)]. After the blood draw, law enforcement officers transported Plaintiff to the Jefferson County jail to serve the required "four-hour mandatory minimum hold" [*See* Docs. 29 (J. Reff Body Camera); 33-1 at 23 (J. Wolski Dep. 85:1-25)]. Plaintiff was "released" from jail on bond "at 9:40 in the morning" [*See* Doc. 33-1 at 23 (J. Wolski Dep. 87:1-2)].

The State of Tennessee prosecuted Plaintiff for Driving Under the Influence, in violation of Tennessee Code Annotated § 55-10-401 [*See* Doc. 27-8 (Affidavit of Complaint)]. Plaintiff's "Official Toxicology Report" indicated that no illicit substances were detected in Plaintiff's blood [Doc. 27-12]. On April 29, 2025, the charge was dismissed with costs taxed to the State [*See* Doc. 27-10 (Nolle Prosequi)]. The Judgment notes that Plaintiff "stipulate[d] [to] probable cause for the stop," but Plaintiff's "BAC [Blood Alcohol Content] was under the legal limit" and his "TOX [Toxicology] report was negative." [*Id.*].

Thereafter, Plaintiff filed this action [*See* Doc. 1]. The Complaint raises federal Section 1983 claims against Defendant Officer Reff for unlawful arrest and malicious prosecution, in violation of Plaintiff's "Fourth and Fourteenth Amendment" rights [*See* Doc. 1 at 3-4]. And the Complaint alleges that Defendant City of Jefferson City is liable for the unconstitutional acts of Defendant Officer Reff [*See id.*]. The Complaint raises state claims too [*See id.* at 4].

Defendants moved for summary judgment on all claims [*See* Doc. 27]. Plaintiff responded [Doc. 33]. Defendants replied [Doc. 35]. Plaintiff also filed a "Motion for Sur-Reply" [Doc. 36] and a "Proposed Sur-Reply" [Doc. 36-1]. Defendants opposed [Doc. 37].[3]

## II. <u>Analysis</u>

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where facts "are recorded on video," the Court views those recorded facts "in the video's light, not in a light favorable to Plaintiff." *See Cunningham*, 994 F.3d at 765. But the Court views the other facts in the light most favorable to Plaintiff. *See Matsushita Elec. Indus.*, 475 U.S. at 587. The moving Party bears the burden of demonstrating that no genuine dispute of material fact exists. *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 323 (6th Cir. 2023) (citation omitted). If the moving Party meets its burden, the nonmoving Party "must set forth specific facts showing that there is a genuine issue for trial." *See Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022) (quotation omitted). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could

[3] Because Plaintiff's "Sur-Reply" does not change the outcome of the case or the Court's analysis, the Court considers the supplemental brief [Doc. 36-1]. *See* E.D. Tenn. L.R. 7.1(d). And the Court **GRANTS** Plaintiff's "Motion for Sur-Reply" [Doc. 36].

reasonably find for'" the nonmoving Party. *See Nat'l Satellite Sports, Inc.*, 253 F.3d at 907 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 249 (1986)).

### A. Defendant Officer Reff Is Entitled To Summary Judgment On The Section 1983 Claims.

Starting with the Section 1983 claims against Defendant Officer Reff, Defendant Officer Reff is entitled to summary judgment because he had probable cause to arrest Plaintiff. To establish a claim under Section 1983, Plaintiff must show that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Under the Fourth Amendment, an officer may conduct a warrantless arrest "where there is probable cause to believe that a criminal offense has been or is being committed." *Ouza v. City of Dearborn Heights*., 969 F.3d 265, 279 (6th Cir. 2020) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). Probable cause exists where based on "the totality of the circumstances confronted by the officer at the time of the arrest," the "facts and circumstances within the officer's knowledge would lead a reasonable officer to believe that the suspect has committed, is committing, or is about to commit an offense." *See Jones v. Naert*, 121 F.4th 558, 564 (6th Cir. 2024), *reh'g denied*, No. 23-1056, 2024 WL 5398777 (6th Cir. Dec. 11, 2024) (citations omitted). The officer need not ultimately be right.

At the time Defendant Officer Reff arrested Plaintiff, he had probable cause to believe that Plaintiff had driven, or was driving, unlawfully under the influence. Under Tennessee law, a person is guilty of driving under the influence when he drives a motor vehicle "[u]nder the influence of any intoxicant" that "impairs [his] ability to safely operate a motor vehicle by depriving [him] of the clearness of mind and control of oneself that [he] would otherwise possess" or "[t]he alcohol concentration in [his] blood or breath is eight-hundredths of one percent (0.08%) or more." Tenn. Code Ann. § 55-10-401(1), (2). Plaintiff does not contest that Defendant Officer Reff had probable

cause to initiate the traffic stop because Plaintiff was driving at 11:00 at night without operating taillights [*See* Docs. 33 at 18 ("The traffic offense immediately provided Defendant Reff a reason to pull Mr. Wolski over."), 27-10]. And at the time Defendant Officer Reff arrested Plaintiff, Officer Reff knew that Plaintiff (1) was driving home from the American Legion where alcohol was served, (2) was driving late at night without taillights, (3) had "the odor of alcohol" on his person, (4) exhibited what Officer Reff believed to be "slurred speech," (5) had consumed "four" alcoholic drinks at the American Legion following a funeral, and (6) performed poorly on several field sobriety tests, including the HGN, which tests eye movement [*See* Doc. 29 (J. Reff Body Camera)]. Even in light of Plaintiff's professed bad knees and back, this was enough for a reasonable officer to believe that Plaintiff was either (1) impaired, or (2) had an alcohol concentration in his blood or breath of more than 0.08%. *See* Tenn. Code Ann. § 55-10-401(1), (2). *See Jones*, 121 F.4th at 564. This is especially true in light of Plaintiff's offer early in the interaction to park his truck on the side of the road and walk home in the dark of night if only Officer Reff would let him [*See* Doc. 29 (J. Reff Body Camera)].

And a subsequent breathalyzer test confirmed that Plaintiff had alcohol in his system (a little more than thirty percent (30%) of the legal limit more than an hour after the initial stop began) [*See* Doc. 27-11 (Breathalyzer Test Results)]. That fact significantly distinguishes this case from the precedent on which Plaintiff relies. *Contra Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) (explaining that where there was no video recording of a stop, "the fact that [Plaintiff's] blood alcohol was [later] found to be 0.00% casts doubt on [the officer's] claims that [Plaintiff] smelled of alcohol and failed the field sobriety tests"); *Green v. Throckmorton*, 681 F.3d 853, 862-63 (6th Cir. 2012) (concluding that the question of reasonable suspicion was reserved where the driver's "subsequent test for drugs and alcohol showed that the driver was in fact sober"

and the video recording supported some, but not all, of the officer's assertions). Instead, this case is more like *Jolley v. Harvell*, an unpublished opinion of the Sixth Circuit, where the totality of the circumstances established probable cause. *See* 254 F. App'x 483 (6th Cir. 2007). Accordingly, Defendant Officer Reff had probable cause. So, he is entitled to summary judgment on this claim.

Plaintiff also raises a malicious prosecution claim against Defendant Officer Reff, but that claim too fails because Defendant Officer Reff had probable cause. "[T]he gravamen of the Fourth Amendment claim for malicious prosecution" is "the wrongful initiation of charges without probable cause." *See Thompson v. Clark*, 596 U.S. 36, 43 (2022).[4] A Fourth Amendment malicious prosecution claim, therefore, requires the State to "institute[]" "the suit or preceding" "without any probable cause." *Id.* at 44 (citation omitted). Here, as discussed above, Officer Reff had probable cause to arrest Plaintiff. As a result, the Fourth Amendment malicious prosecution claim fails. *See Thompson*, 596 U.S. at 43.

**B. Defendant City Of Jefferson City Is Entitled To Summary Judgment On The Section 1983 Claims.**

Moving to Defendant City of Jefferson City, because Defendant Officer Reff did not violate Plaintiff's constitutional rights, the City of Jefferson City is entitled to summary judgment. The Complaint bases the City of Jefferson City's liability on the actions of Officer Reff [*See* Doc. 1 at 3-4]. "[F]or a municipal entity to be liable [under Section 1983], a plaintiff must show: (1) a

---

[4] To the extent Plaintiff seeks to bring a malicious prosecution claim based on some "substantive due process right" in the Fourteenth Amendment, "the [legal] viability of such a claim is unclear." *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 870-71 (6th Cir. 2024). To the extent that a claim could conceptually exist, Plaintiff would have to show "a violation of an explicit constitutional guarantee" or "behavior by a state actor that shocks the conscience." *Id.* at 871 (cleaned up). Plaintiff has not argued that Defendant Officer Reff's behavior shocks the conscience [Docs. 33, 36-1]. Nor has he identified evidence in the record that would allow a jury to make that finding. So, as alleged and argued, any Fourteenth Amendment "substantive due process" claim would depend upon a conclusion that Defendant Officer Reff violated Plaintiff's Fourth Amendment rights. *See Susselman*, 109 F.4th at 871.

deprivation of a constitutional right; and (2) that the municipal entity is responsible for that deprivation." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015) (internal citation omitted). Here, because Officer Reff did not violate Plaintiff's constitutional rights, Defendant City of Jefferson City is entitled to summary judgment on the Section 1983 claims against it under Plaintiff's theory of the case. *See Baynes*, 799 F.3d at 620.

### C. The Court Declines To Exercise Jurisdiction Over The Remaining State Claims.

The Court's original jurisdiction rests only on Plaintiff's Section 1983 claims [*See* Doc. 1]. *See* 28 U.S.C. § 1331. "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach" any "state-law claims." *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)). Because the Court dismisses Plaintiff's federal Section 1983 claims, the Court declines to exercise jurisdiction over the remaining state claims. *See id.* The Court does not reach the merits of those claims, so the Court dismisses them without prejudice.

## III. <u>Conclusion</u>

For the reasons above, the Court (1) **GRANTS** Defendants' Motion for Summary Judgment [Doc. 27] as it relates to the claims under 42 U.S.C. § 1983 and **DISMISSES** those claims **WITH PREJUDICE** and (2) **DISMISSES** the remaining state claims **WITHOUT PREJUDICE**. No claims remain in this action. Accordingly, an appropriate judgment shall enter.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge